**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN COURTHOUSE**

| | |
|---|---|
| Esther Klang, individually and on behalf of all others similarly situated, | 1:23-cv-01316 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Google North America Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Google North America Inc. ("Defendant") manufactures and sells the Pixel 6 smartphones, marketed "Charg[ing] 50% in about 30 minutes," under the Google brand (the "Product").



2. This promise of faster charging speeds is misleading for multiple reasons.

3. First, it fails to disclose it requires buying the $25 Google 30W USB-C Charger, based on the USB Power Delivery PPS charging protocol ("PPS").

4. Second, even where the need for the 30W USB-C Charger is disclosed, independent laboratory testing concluded that "the maximum power obtained from both the Pixel 6 and Pixel 6 Pro is just 22W, with an average of just 13W over a full cycle [and] [A]t no point [do] speeds [reach] anywhere close to the 30W charging that many have (quite fairly) assumed the Pixel 6 series is capable of."[12]

> Up to 50% charge in 30 minutes with Google 30W USB-C. Charger with USB-PD 3.0 (PPS) sold separately.
> Fast wired charging rates are based upon use of the Google 30W USB-C Charger plugged into a wall outlet. Compatible with USB PD 3.0 PPS adapters. Actual results may be slower. Adapters sold separately.

5. Third, the statement that the Product "Charges 50% in about 30 minutes" is qualified by a lengthy footnote with numerous caveats and exclusions a regular buyer would not see nor understand.[3]

> [13] Charging speed based upon testing with device batteries drained to 1% and charged with Google 30W USB-C® Charger; sold separately. Charging testing conducted by Google in mid-2021 on pre-production hardware and software using default settings with the device powered on. Charging speed depends upon many factors including usage during charging, battery age and ambient temperature. Actual charging speed may be lower.

6. Based on the promise of charging 50% in 30 minutes, a typical smartphone user will believe the Product can fully charge in an hour.

7. However, the testing revealed a full charge from near empty takes over two hours.

8. This is because "[T]he [reasonably] assumed 30W charging isn't 30W at all," but a a maximum of 22W, shown in the graph below.

---

[1] Robert Triggs, Tested: The Pixel 6 charges much slower than Google implied: The Pixel 6 and Pixel 6 Pro's '30W charging' is a myth, Android Authority, Feb. 10, 2023 (testing conducted with Google's proprietary charger and other comparable equivalents).
[2] Up to 50% charge in 30 minutes with Google 30W USB-C. Charger with USB-PD 3.0 (PPS) sold separately. Fast wired charging rates are based upon use of the Google 30W USB-C Charger plugged into a wall outlet. Compatible with USB PD 3.0 PPS adapters. Actual results may be slower. Adapters sold separately.
[3] Charging speed based upon testing with device batteries drained to 1% and charged with Google 30W USB-C Charger; sold separately. Charing testing conducted by Google in mid-2021 on pre-production hardware and software…



9. Since fast charging uses more power at the beginning during the battery's constant current phase, it reaches 50% in about 30 minutes.

10. However, the next 50% takes three times as long, with the power gradually reduced to 2.5W, not 30W.

11. There are several explanations for why the Product does not fully utilize the 30W charging capacity.

12. First, reducing the Product's power draw can be valuable in "controlling temperatures and reducing battery stress," though this results in longer charge times.

13. A reason to not approach the limits of the 30W charger would be if the battery is of lower quality, such that it would deteriorate faster if the power transferred was greater.

14. That comparable smartphones draw more power from Google's 30W USB-C Charger than the Pixel lends support to this explanation.

15. For example, the Samsung Galaxy, with the same battery capacity of 5,000 mAh, "draws 25W from the same plug and even hits peaks of 28W before reducing its charging power at the 50% mark," and fully charged 49 minutes quicker.

16. Second, testing confirmed the Pixel 6 models use "[a] virtually identical charging algorithm" as previous versions albeit with minimally more power.

3

17. Had the Pixel 6 utilized a different charging algorithm, it would be able to take advantage of the promised faster charging.

18. There is no indication that the PPS standard, which enables optimal power delivery based on factors such as battery condition and temperature, is used to better optimize the Product's charging speed more than previous versions.

19. This was confirmed because when the Product was charged with the prior 18W USB Power Delivery plug, it still drew a charge at 18W until 60% battery capacity before falling to 15W, no different than with the PPS version.

20. Third, the conditions cited in the footnote are not equivalent to those experienced by most Pixel 6 owners, who use their phones while charging and inevitably are not always charging new batteries.

21. By moving to an entirely new charging standard, the accessories owned by Pixel 6 users are no longer compatible, with only 4W more power supplied and 10 minutes saved compared to the 18W charger.

22. A purchaser will not expect that a new type of charger, costing $25, will only save them 10 minutes, especially in light of the prominence of the "fast charging" claims.

23. One news outlet noted that while the Product's claims' "[were] not an outright lie, [its] literature [wa]s certainly disingenuous about the[ir] capabilities," "[E]specially given Google's tacit suggestion that its new phones charge faster than ever before thanks to the new 30W power adapter."

24. This "duped customers and the press into believing the Pixel 6 series supports much more powerful charging than it actually does."

25. As a result of the false and misleading representations, the Product is sold at a price

premium, approximately no less than $549.99 for the 128GB version, excluding tax and sales.

## Jurisdiction and Venue

26. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

27. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

28. Plaintiff is a citizen of New York.

29. Defendant is a Delaware corporation with a principal place of business in California.

30. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

31. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, from consumer electronics stores, big box stores, cellular service providers, and online, in the States Plaintiff seeks to represent.

32. Venue is in this District with assignment to the Brooklyn Courthouse because a substantial part of the events or omissions giving rise to these claims occurred in Kings County, including Plaintiff's purchase, reliance on the identified statements, use of the Product and experiences described here and subsequent awareness they were false and misleading.

## Parties

33. Plaintiff Esther Klang is a citizen of Brooklyn, New York, Kings County.

34. Defendant Google North America Inc. is a Delaware corporation with a principal place of business in Mountain View, New Jersey, Santa Clara County.

35. Defendant is a leader in technological innovation.

36. Plaintiff bought the Product from Amazon in or around the fall of 2021.

37. Plaintiff read and relied on the statements that the Product charged "50% in about 30 minutes," that it used the 30W charger operating and with the PPS standard.

38. Plaintiff expected the Product would draw power at 30W for a significant amount of time when plugged in, a full charge would take not much more than an hour, and that the 30W charging provided a more meaningful benefit than saving 10 minutes in exchange for having to pay an extra $25.

39. Plaintiff bought the Product at or exceeding the above-referenced price.

40. Plaintiff paid more for the Product than she would have had she known the above-referenced facts or would not have purchased it.

41. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

42. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

## Class Allegations

43. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Montana, Wyoming, Utah, Idaho and Alaska who purchased the Product during the statutes of limitations for each cause of action alleged.

44. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

45. Plaintiff's claims and basis for relief are typical to other members because all were

6

subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

46. Plaintiff is an adequate representative because her interests do not conflict with other members.

47. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

48. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

49. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>New York General Business Law ("GBL") §§ 349 and 350</u>
<u>(New York Class)</u>

50. Plaintiff incorporates by reference all preceding paragraphs.

51. Plaintiff expected the Product would draw power at 30W for a significant amount of time when plugged in, a full charge would take not much more than an hour, and that the 30W charging provided a more meaningful benefit than saving 10 minutes in exchange for having to pay an extra $25.

52. Plaintiff relied on Defendant's false and deceptive representations and omissions.

53. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>State Consumer Fraud Acts</u>
<u>(Consumer Fraud Multi-State Class)</u>

54. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

55. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

56. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

57. The Product was manufactured, labeled, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would draw power at 30W for a significant amount of time when plugged in, a full charge would take not much more than an hour, and that the 30W charging provided a more meaningful benefit than saving 10 minutes in exchange for having to pay an extra $25.

58. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

59. Defendant knew the product attributes that potential customers like Plaintiff were seeking such as faster charging, and developed its marketing and labeling to directly meet those needs and desires.

60. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would draw power at 30W for a significant amount of time when plugged in, a full charge would take not much more than an hour, and that the 30W charging provided a more meaningful benefit than saving 10 minutes in exchange for having to pay an extra $25.

61. Defendant described the Product so Plaintiff and consumers believed it would draw

power at 30W for a significant amount of time when plugged in, a full charge would take not much more than an hour, and that the 30W charging provided a more meaningful benefit than saving 10 minutes in exchange for having to pay an extra $25, which became part of the basis of the bargain that it would conform to its affirmations and promises.

62. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

63. This duty is based on Defendant's outsized role in the market for this type of product, the globally trusted Google brand and its flagship Pixel phones.

64. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

65. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

66. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

67. The Product did not conform to it affirmations of fact and promises due to Defendant's actions.

68. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would draw power at 30W for a significant amount of time when plugged in, a full charge would take not much more than an hour, and that the 30W charging provided a more meaningful benefit than saving 10 minutes in exchange for having to pay an extra $25.

69. The Product was not merchantable because Defendant had reason to know the

particular purpose for which the Product was bought by Plaintiff, because she expected it would draw power at 30W for a significant amount of time when plugged in, a full charge would take not much more than an hour, and that the 30W charging provided a more meaningful benefit than saving 10 minutes in exchange for having to pay an extra $25, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

### Fraud

70. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would draw power at 30W for a significant amount of time when plugged in, a full charge would take not much more than an hour, and that the 30W charging provided a more meaningful benefit than saving 10 minutes in exchange for having to pay an extra $25.

71. The records Defendant is required to maintain, the information inconspicuously disclosed to consumers, and its internal surveys, provided it with actual and constructive knowledge of the misleading implications of its claims.

### Unjust Enrichment

72. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

   1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

   2. Awarding monetary, statutory and/or punitive damages and interest;

   3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated: February 17, 2023

                                          Respectfully submitted,

                                          /s/ Spencer Sheehan
                                        Sheehan & Associates, P.C.
                                        60 Cuttermill Rd Ste 412
                                        Great Neck NY 11021
                                        (516) 268-7080
                                        spencer@spencersheehan.com